# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

GREENWICH BOARD OF EDUCATION,

               Plaintiff,

  v.

G.M. and J.M., individually and as next
friends of K.M.,

               Defendants.

3:13-cv-00235 (CSH)

## RULING ON DEFENDANTS' MOTION TO SUBMIT ADDITIONAL EVIDENCE

HAIGHT, Senior District Judge:

Plaintiff, a local board of education, brings this action pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400-1482 ("IDEA"), to appeal a decision and order (the "Order") of a hearing officer (the "Hearing Officer") of the State of Connecticut's Department of Education.  Specifically, Plaintiff filed suit in this Court under Section 1415(i)(2) of the IDEA, which grants the right to bring a civil action to certain parties claiming to have been aggrieved by the IDEA's dispute resolution process.

Although victorious below, Defendants (G.M. & J.M. the "Parents," and K.M., the "Student") bring the instant Motion [Doc. #29] to supplement the record with evidence not considered by the Hearing Officer, a right provided by Section 1415(i)(2)(C)(ii) of the IDEA.[1]  Plaintiff opposes the Motion, which is fully briefed.  This Ruling resolves the Motion.

## I.  Background

Student attended kindergarten and the first grade at Riverside Elementary School, a school

---

[1]  Defendants' Motion inadvertently cites to Section 1415(i)(1)(C)(ii), a non-existent provision.  [Doc. #29], at 1.

within the jurisdiction of Plaintiff Greenwich Board of Education (the "Board"), for the 2010-11 and 2011-12 academic years. Compl. [Doc. #1] ¶6. Following the first grade, Parents grew concerned with Student's academic performance, and requested that the Board refer Student's case to a planning and placement team ("PPT") to assess Student's eligibility for a special education program. *Id.* ¶24. The Board convened an PPT, which ultimately deemed Student ineligible for such a program. *Id.* ¶26. Parents filed an appeal of that decision—requesting what is known as a "due process hearing"—with the Connecticut Department of Education. *Id.* ¶27.

Prior to the due process hearing, in early August 2012, Parents elected not to have Student attend Riverside for the 2012-13 academic year, and instead enrolled Student in The Windward School. *Id.* Windward is a private school in White Plains, New York, specializing in helping children with certain language-based learning disabilities. Through the due process hearing, Parents aimed to take advantage of IDEA procedure that might allow them to be reimbursed for their Windward tuition payments. *Id.* Such reimbursement may be available under the IDEA where a student is improperly denied a proper special education program and the parents thereafter unilaterally enroll their child in a school they can demonstrate is "appropriate" for their child's special needs. *See School Committee of Town of Burlington, Mass. v. Dep't of Educ. of Mass.*, 471 U.S. 359, 369 (1985).

A pre-hearing conference was held prior to the due process hearing, at which the issues for resolution were set. Compl. Ex. A [Doc. #1], at 1. Specifically, the Hearing Officer would determine: (i) if the Board erred in determining Student ineligible for special education;[2] and (ii) if

---

[2] At the outset, Parents sought a determination that the Board erred both with respect to its determinations as to the 2011-12 and 2012-13 academic years. However, on the final day of the hearing, Parents withdrew their request as to the 2011-12 year.

so, whether Windward was an appropriate private placement such that Parents may receive a tuition reimbursement.  *Id.*

Following six days of hearings, on January 3, 2013 the Hearing Officer issued a ruling in favor of Parents on both issues, and thereafter affirmed her decision in the face of a Motion for Clarification on February 4, 2013.  *Id.*, at 1-11; Compl. Ex. B [Doc. #1].  Thereafter, the Board filed suit in this Court, seeking a ruling overturning the Hearing Officer's Order.  The parties contemplate that the case will be resolved by summary judgment practice, based on the administrative record and any evidence with which it is supplemented.  [Doc. #27], at 10, 11.

As the instant litigation developed, Parents grew concerned about the adequacy of the record relied on by the Hearing Officer in reaching her decision.  Specifically, Parents believe that the record as to the second issue for resolution—whether Windward was an appropriate private placement entitling Parents to reimbursement—is lacking and in need of supplementation.  Through the instant Motion they seek to introduce additional evidence for use in this proceeding that was not accounted for by the Hearing Officer.

Principally, the Motion makes three general arguments as to why Parents should be permitted to supplement the record as to the propriety of Windward:  (i) certain evidence was improperly excluded by the Hearing Officer; (ii) this Court has the power to review relevant post-hearing evidence as to the propriety of a private placement; and (iii) due to off-the-record intimations of the Board and the Hearing Officer at the due process hearing that the propriety of Windward as a reimbursable expense was not in dispute, Parents were not incentivized to—and did not—proffer

-3-

certain contemporaneous evidence on that issue.[3]

Specifically, Parents request the record to be supplemented with the following:

- A one-page document consisting of Student's "standardized testing conducted by [Windward]." Mem. [Doc. #29-1], at 4; [Doc. #26-8], at 25. ("Student's Windward Standardized Testing").

- A November 18, 2012 e-mail from G.M. to Parents' counsel, attaching Student's progress report from Windward containing evaluations as of November 2012. Mem. [Doc. #29-1], at 4; [Doc. #26-8], at 27-41, [Doc. #26-8], at 1. ("Student's November 2012 Windward Report Card").

- Student's progress report from Windward containing evaluations as of November 2012, February 2013, April 2013, and June 2013. [Doc. #39-1], at 11-26. ("Student's June 2013 Windward Report Card").

- "Testimony from the private placement regarding the appropriateness of the private placement." [Doc. #29-1], at 4. ("Windward Testimony").

## II. Discussion

The IDEA provides that, in an action challenging an administrative decision, a district court "(i) shall receive the records of the administrative proceedings; (ii) *shall hear additional evidence at the request of a party*; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C) (emphasis added). As evinced through the emphasized language, the IDEA does not limit a district court to the administrative record, and envisions that there may be "some supplementation at trial." *Town of Burlington v. Dep't of Educ. of Mass.*, 736 F.2d 773, 790 (1st Cir. 1984), *aff'd on other grounds*, 471 U.S. 359 (1985). In *Burlington*, a leading case on the issue of receiving additional evidence under

---

[3] In this proceeding, the Board is in fact challenging the Hearing Officer's decision as to the propriety of the private placement. *See* Compl. [Doc. #1], at 51.

the IDEA,[4] the First Circuit identified several permissible "reasons for supplementation": "gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing." *Id.*

"The decision whether and to what extent to admit additional evidence is committed to the discretion of the court, 'which must be careful not to allow such evidence to change the character of the hearing from one of review to a trial de novo.'" *A.S. v. Trumbull Bd. of Educ.*, 414 F. Supp.2d 152, 170 (D. Conn. 2006) (quoting *Burlington*, 736 F.2d at 791).  Courts must "give 'due weight' to these [administrative] proceedings, mindful that the judiciary 'lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy.'" *M.S. v. Bd. of Educ. of the City Sch. Dist. of the City of Yonkers*, 231 F.3d 96, 102 (2d Cir. 2000) (quoting *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206 (1982)).  A district court should be mindful that "admitting additional evidence . . . '[may] have the consequence of making the whole IDEA process more time consuming, as parties scramble[] to use the federal court proceeding to patch up holes in their administrative case.'"  *A.S. v. Trumbull Bd. of Educ.* 359 F. Supp. 2d 102, 105 (D. Conn. 2005) (quoting *Springer v. Fairfax County Sch. Bd.*, 134 F.3d 659, 667 (4th Cir. 1998)).

The party seeking to supplement the record carries the burden of establishing that its proffered evidence is probative of the issues before the court and of explaining why the evidence was not presented in the administrative proceeding.  *See Handleman v. Bd. of Educ. of Penfield Cent.*

---

[4]  In *Burlington*, the First Circuit was actually interpreting the Education for All Handicapped Children Act, 20 U.S.C. §§ 1401-1461, which was subsequently amended and renamed IDEA.

*Sch. Dist.*, 2007 WL 3076970, at \*5 (W.D.N.Y. Oct. 19, 2007); *see also Plainville Bd. of Educ. v. R.N.*, 2009 WL 2059914, at \*1 (D. Conn. July 10, 2009) ("The party moving to submit additional evidence must establish that it is relevant and necessary.").

The Court addresses Parents' proffered supplemental evidence in turn.

### A.    Student's Windward Standardized Testing

Parents aim to supplement the record with Student's "standardized testing conducted by the private placement, which the hearing officer excluded in its entirety."[5]  Parents therefore seem to argue for the submission of this document into evidence on the ground that it was improperly excluded by the Hearing Officer.

The Hearing Officer excluded Student's Windward Standardized Testing following the Board's objection that Parents had failed to proffer a witness who could testify as to its contents. [Doc. #23-4], at 4-5.  As argued by the Board in opposition to the instant Motion, this one-page document "does not speak for itself," and "require[s] testimony from those knowledgeable about its contents and meaning."  Obj. [Doc. #35], at 13; *see also A.S.*, 414 F. Supp.2d at 172 ("records [that] do not speak for themselves," "have to be explained and placed in context" (internal quotation omitted)).  The record contains nothing that sheds light on the contents and meaning of this document, and, after review, the Court is unable to unearth such content or meaning on its own.[6]

---

[5] Parents did not submit a version of this document with their Motion.  However, as Plaintiff points out, Opp. [Doc. #35], at 5 n.2, this document was contained in what was filed as the Administrative Record with this Court, [Doc. #26-8], at 25.

[6] For example, even if the Court were familiar with the significance of "Stanford 10 Reading Scores" and "Stanford 10 Math Scores," it would have no context for these standalone scores and what they may indicate, if anything, about Student's performance at Windward compared to her performance at Riverside.

*See A.S.*, 414 F. Supp.2d at 172 (denying motion to supplement the record where the "Court lacks expertise in the . . . educational field[] and would require a substantial amount of testimony to give [meaning to the proffered documents]"). As in *A.S.*, "[i]n order to ensure a sufficiently balanced record, the Court would have to extend discovery to allow the Board to access relevant records and depose involved witnesses." 414 F. Supp.2d at 171. This the Court elects not to do. *See id.*, 414 F. Supp.2d at 170 (the decision to "admit additional evidence is committed to the discretion of the court, 'which must be careful not to allow such evidence to change the character of the hearing from one of review to a trial de novo.'" (quoting *Burlington*, 736 F.2d at 791)).

Nor was it improper—contrary to what Parents argue for the first time in their reply [Doc. #39], at 2-3—for the Hearing Officer to refuse to allow a Windward administrator to testify telephonically as to this document. Doing so would have violated the Board's statutory rights. Specifically, the IDEA states, in relevant part, that "a party to [an administrative] hearing . . . shall be accorded . . . the right to present evidence and confront, cross-examine, and compel the attendance of witnesses." 20 U.S.C. § 1415(h)(2). In *Walled Lake Consolidated Schools v. Jones*, 24 IDELR 738 (E.D. Mich. 1996), the court concluded that a hearing officer violated a school district's procedural due process rights by granting a parent's request, over the school district's objection, to take telephonic testimony from out of state witnesses. Relying on the statutory language of 20 U.S.C. § 1415(d) (now 20 U.S.C. § 1415(h)), the court held:

> It . . . seems that in cases such as this one, telephone testimony would not penalize the [school district], would be advantageous and economical to the [parent and her child] and result in the "meaningful opportunity to be heard" required in due process hearings. . . . However, the plain language of the statute is difficult to set aside absent any legislative intent. The statute provides that any party to any hearing . . . be accorded the right to " . . . confront, cross-examine and compel the attendance of witnesses. . . ." . . . The language of 20

-7-

> U.S.C. § 1415(d) affords many of the safeguards of a trial.  The use
> of the words "confront," "cross-examine" and "compel the attendance
> of witnesses" leaves this Court little room to find anything other than
> the plain meaning of those words. . . .   Absent agreement of the
> parties to the contrary, telephone testimony in this case does not
> adequately allow for confrontation under the statute at issue.

*Walled Lake*, 24 IDELR at 739 (footnote, citations, and some quotation marks omitted).  In line

with these principles, the Hearing Officer's decision to preclude telephonic testimony was in line

with the IDEA and therefore proper.

Moreover, even were the Court willing to reopen discovery as to the Windward Standardized

Testing, there is no basis for the Court to believe that the Parents would be able to elicit such

testimony from anyone at Windward.  Windward refused to make anyone available to so testify at

the due process hearing.  Rather, Windward apparently invoked its contractual right not to "make

available School administrators, teachers or staff members to testify or prepare testimony relating

to tuition reimbursement proceedings initiated by or against any state or local authority." [Doc. #26-

3], at 10; *see also* Reply [Doc. 39], at 2 ("Parents counsel had informed the Board and the hearing

officer that the Parents were constrained by contract with the private placement from compelling

their attendance at the Hearing").  The Court sees no reason why this contractual provision would

not apply with equal force here to bar Windward's participation in this proceeding.  *See Burlington*,

736 F.2d at 791 ("In ruling on motions for witnesses to testify a court should weigh . . . important

concerns," including "the reasons the witness did not testify").

The Court denies the request to add Student's Windward Standardized Testing to the record.

**B.     Student's Windward Report Cards**

Parents seek to introduce two report cards documenting Student's progress at Windward.  The

first, dated November 2012, was introduced at the hearing but only for the "limited purpose" of

-8-

allowing Parents to provide their understanding of the document. [Doc. #23-4], at 5. The second, dated June 2013, purports to contain Student's grades for the entire 2012-13 academic year at Windward, which is, of course, post-hearing evidence.[7]

For reasons to be made clear, the Court begins with the June 2013 Windward Report Card. The law in this Circuit is that a district court reviewing an IDEA proceeding's determination as to the appropriateness of a private placement may review the student's "final report card" from the private placement, even though that document could not have been available at the time of the hearing. *M.B. ex rel. L.C. v. Minisink Valley Cent. Sch. Dist.*, 2013 WL 1277308, at *2 (2d Cir. Mar. 29, 2013) (the court may rely on such "additional evidence [to] show that [the student] made some academic . . . progress while at [the private placement]"). The Board does not contest as such. Opp. [Doc. #35], at 15. Rather, the Board argues against the admission of the June 2013 Report Card solely on the basis that Parents failed to proffer the specific document along with the instant Motion and thus did "'not provide the Court with enough information for the Court to assess whether such evidence should be permitted.'" Opp. [Doc. #35], at 15-16 (quoting *Jordan S. v. Hewlett Woodmere Union Free Sch. Dist.*, 2009 WL 910804, at *3 (E.D.N.Y. Mar. 31, 2009)). Parents have now submitted this document to the court. [Doc. #39-1], at 11-26. The Board's objection is moot. Student's June 2013 Windward Report Card will be admitted into the record before this Court.

Parents also seek to introduce Student's November 2012 Windward Report Card, which they claim is "additional" evidence despite it being included in the administrative record (and, therefore, despite it being filed with this Court as part of same). Mem. [Doc. #29-1], at 4. Parents are

---

[7] Parents submitted this latter document as Attachment 4 to their reply brief. [Doc. #39-1], at 11-26.

apparently of the view that this constitutes "additional" evidence because the Hearing Officer purported to limit its inclusion in the record such that its use was cabined to eliciting Parents' understanding of it.  However, as is the Board, the Court is not entirely clear what supplementation is being requested here.  *See* Opp. [Doc. #35], at 14 (the Board admitting that this "Court, like the Hearing Officer, will have the opportunity to review the exhibit and afford it the appropriate weight in reaching a decision in this case").  The Court fails to understand what relief Parents seek here, and, on that ground, denies the request.

However, the Board's challenge to the inclusion of the November 2012 Windward Report Card is almost all but moot given this Court's holding that it will allow Parents to supplement the record with the June 2013 Windward Report Card.  This is because the June 2013 Report Card contains all of the same content—including Student's grades—that is contained in the November 2012 Report Card.  *Compare* [Doc. 26-8], at 27-41, [Doc. #26-9], at 1 *with* [Doc. #39-1], at 11-26. In short, with the inclusion of the June 2013 Report Card, the November 2012 Report Card retains little to no independent significance.[8]

Accordingly, as a formal matter, the Court denies Parents' request to supplement the record with Student's November 2012 Windward Report Card for the simple reason that Parents have not explained exactly how this would constitute "additional evidence."  However, as discussed, the Court grants Parents' request to supplement the record with Student's June 2013 Windward Report Card.

---

[8]  It is true that the document that the Court is identifying as the November 2012 Windward Report Card contains one additional page entirely distinct from the June 2013 Windward Report Card. [Doc. #26-8], at 27.  This page is an e-mail from Parent G.M. to counsel for Parents.  Parents have not claimed there to be any probative value to this page—nor does the Court see any—and thus this minor distinction in the two documents does not affect the analysis in text.

III.    **Windward Testimony**

Parents aim to introduce unidentified "[t]estimony from the private placement regarding the appropriateness of the private placement." Mem. [Doc. #29-1], at 4. This request can be quickly dispatched for the threshold reason that Parents altogether fail to identify with any specificity the testimony they aim to introduce. *See A.S.*, 359 F. Supp. 2d at 104 (denying request to supplement the record where "Plaintiffs provide[d] the Court with only the vaguest descriptions of the documents they seek to add to the record," and "[w]hen it comes to informing the Court precisely what bearing these records will have on the Court's evaluation of the hearing officers' decision, Plaintiffs are equally general and conclusory"). In short, Parents offer no indication as to the individuals from which they hope to elicit testimony, the form and content of that testimony, or how that testimony will not be duplicative of evidence in the record. Additionally, as discussed above, Parents offer no indication that testimony from the private placement is even attainable.

Here, however, we are confronted for the first time with Parents' argument that they should be permitted to supplement the record as to the propriety of the private placement because they were specifically told by the Hearing Officer and the Board that this element of their claim was not in dispute.[9] Parents claim that—to their misfortune—these intimations were somehow not captured on the hearing transcript. In turn, the Board claims it never gave any indication that it would not challenge the propriety of the private placement. The parties submit mutually exclusive sworn

_____

[9] The Court only visits this argument as to the request for Windward Testimony because it cannot be relevant to Parents' three other requests. At the hearing, Parents attempted to enter Student's Windward Standardized Testing and the November 2012 Windward Report Card into the record and thus cannot claim they were disincentivized from introducing them. As to Student's June 2013 Windward Report Card, this is a post-hearing document that was unavailable for Parents to introduce at the hearing.

accounts as to whether such intimations were ever made.[10]

However, the Court need expend no effort in resolving this dispute as its holding just above as to lack of specificity is sufficient grounds to determine that supplementation of the record as requested is not warranted. In other words, the Court need not resolve whether Parents were unfairly deterred from introducing evidence as to the propriety of the private placement for the simple reason that Parents have failed to identify the specific evidence which they were deterred from introducing. Parents may now worry that the administrative record is ill-suited to support the Hearing Officer's decision in light of the Board's current challenge to the propriety of the private placement.[11] However, through the instant Motion, Parents were given an opportunity to identify to this Court any testimony they felt was inappropriately absent from the record below. They did not do so.

## IV.   Conclusion

For the reasons stated above, Defendants' Motion to Submit Additional Evidence [Doc. #29] is GRANTED in part, and DENIED in part.

Defendants' motion to submit Student's Windward Standardized Testing as additional evidence is DENIED;

Defendants' motion to submit Student's November 2012 Windward Report Card as additional

---

[10] In fact, "[i]n the present case, the conflict of testimony is so clear that it is evidence that one or more of the witnesses must have committed perjury." *Haley v. State of Ohio*, 332 U.S. 596, 615 (1948). For example, Parent G.M. swore to this Court that on the last day of the hearing the "Hearing Officer looked to the Board attorney, Abby Wadler, and asked her to confirm that the Board was not disputing the appropriateness of K.M.'s placement at Windward," and that the "Board attorney answered that the Board was not disputing the appropriateness of K.M.'s placement at Windward." [Doc. # 39-1], ¶¶8-9. Nevertheless, Abby Wadler swore to this Court that "At no time in the proceedings before the Hearing Officer did I give any assurance to Attorney McMahon that the appropriateness of the program at the Windward School would not be contested by the Board." [Doc. #35-1], ¶8. Both sworn statements cannot be true.

[11] The Court makes no such assessment of the merits at this juncture.

evidence is DENIED;

Defendants' motion to submit Student's June 2013 Windward Report Card as additional evidence is GRANTED; and

Defendants' motion to submit Windward Testimony is DENIED.

It is SO ORDERED.

Dated: New Haven, Connecticut
September 28, 2015

            */s/ Charles S. Haight, Jr.*
            Charles S. Haight, Jr.
            Senior United States District Judge